### School District No. 7 in Auburn *v.* Sherburne.

If the prudential committee of a school district receive the money assigned to the district for the support of schools, and neglect to appropriate it to that use, the district, after his term of office has expired, may recover the money of him in an action for money had and received.

Assumpsit to recover certain moneys claimed to be due from the defendant as prudential committee of said district.

At the annual meeting of the said district in March, 1865, the defendant was chosen prudential committee of said district for the ensuing year.   The sum of $81.03 was apportioned to the district as its proportion of the school money for the year 1865.  · And in December, 1865, the same was paid over by the treasurer of the town to the defendant as such prudential committee.

During the year 1865 a school was maintained in the summer for eight weeks and in the winter for six weeks, and teachers were hired by the defendant as such prudential committee, and he also made some repairs on the school house.

At the annual meeting of the district in March, 1866, the defendant was not present and did not make any report of his doings as such prudential committee, nor has he at any time made any report of his doings or accounted to the district or any one else for the expenditure of the school money paid him, although demand has been made on him by his successor in office for such account, and for the balance remaining unexpended in his hands.

The case was originally tried before a justice of the peace, and comes here by appeal.

The defendant having been put upon the stand as a witness before the justice, declined to answer any question touching the amounts of the payment made of the school money received by him, or any part of it,

on the ground that he could not testify relating to it without subjecting himself to a criminal prosecution.

The district claim that there is a balance of the school money in the defendant's hands unexpended, and this suit is brought to recover the amount.

It is agreed that this case be submitted on the above statement of facts, judgment to be rendered for the plaintiff for the amount due, to be determined by an auditor appointed by the court, otherwise for the defendant according to the opinion of the court.

S. N. BELL, Plaintiff's Attorney.
WM. LITTLE, Defendant's Attorney.

*S. N. Bell*, for the plaintiff.

The principal question involved in this case is, whether a school district can recover of the prudential committee, after his term of office has expired and his successor been appointed, the balance of the school money assigned by the selectmen to the district, under the provisions of the statute, Rev. Stat. ch. 72, sec. 4, and paid over to the prudential committee, and by him unexpended.

It is held in *School District in Moultonborough* v. *Tuttle*, 26 N. H. 470, that an action will lie in favor of a school district against a prudential committee man to recover money of the district, paid by him to a teacher for his services, who had not made a report to the superintending committee according to law.

The case substantially finds that the school money assigned by the selectmen to the district, and paid over to the prudential committee is the money of the district; and that an action of assumpsit will lie in favor of the district to recover the same when it has been improperly expended. And there is no reason in principle why he should not in like manner be held to account for any unexpended balance in his hands, remaining after his term of office had expired and his successor appointed. And it is held in *Barrett* v. *School District in Bow*, 37 N. H. 449, that if, when a prudential committee goes out of office he holds the funds subject to no charge which by his contract he has created upon it, it is obviously his duty to pay them over to his successor in office, and for his neglect to do so he may undoubedly be held to answer either to the district or to his successor.

In the present case the defendant made no report of his doings, or expenditures to the district, and refused to disclose what disposition he had made of the funds, on the ground that he could not do so without criminating himself.

This necessarily leaves him in the position that he has expended such funds unlawfully, and must be charged for the amount received by him from the selectmen. And if there is any balance of the fund unexpended he is accountable for that to his successor after demand made, even if it were held that his refusal to show what had been done with the

fund.for the reason given, was.not to be taken as an admission that he had disposed of it in some mode not authorized by law.

The case of *School District* v. *Esty*, 16 N. H. 146, seeming to conflict with the cases above cited, must be held to be substantially overruled by the later cases.

*Wm.*·*Little* for the defendant.

This action cannot be maintained. 1. Because "a school district cannot maintain an action of assumpsit against the prudential committee of the district to recover a balance of the school money raised by the town. assigned by the selectmen and paid over to the committee. *School District* v. *Esty*, 16 N. H. 146; *Barr* v. *Deniston*, 19 N. H. 178; *Stebbins* v. *School District*, 16 N. H. 510; 4 Cush. 599; 7 Cush.· 478.

The statute in force at the time the case *School District* v. *Esty* was decided, was.the Revised Statutes, ch. 72, sec. 4, and said .statute is the law now.

The cases *School District* v. *Tuttle*, 26 N. H. 470, and *Barrett* v. *School District*, 37 N. H. 449, are not cases in point, and arose under a different state of facts. If the decision.in 16 N. H. 146, is law, (and it has not been overruled,) the plaintiff cannot.maintain his action.

2. Because sec. 6 ch. 72 Revised·Statutes provides .that if the money assigned and paid over to the prudential. committee of any district shall be by him.not expended according to law, he shall forfeit for each offence a sum not less than the sum so unexpended, or not legally expended, and not exceeding twice said sum to be recovered by indictment.or by information, &c., and this case is an attempt to proceed in a manner contrary to that pointed out by the statute. *School·District* v. *Currier*, 45 N. H. 573. The rule is that if a duty. and a.remedy for it were· created by the same ·statute, then that remedy must be followed. *Stokes* v. *Sanborn*, 45.N. H. 278; *State* v. *Wilson*, 43 N. H. 419. The duty of the prudential committee and the remedy·for the violation of that duty, are created by the same statute, consequently that remedy is the one that. must be followed; it is not a cumulative remedy.

·The defendant in this case refused to answer as a witness before the justice, because he believed that .the district was seeking· for evidence that they·might proceed against him under :the statute, and. he did not wish to furnish evidence to get himself indicted. *Eaton* v.·*Farmer*, 46 N. H. 202.

· PERLEY, C.·J. ·If·the prudential.committee of· a·school ·district.receive the money assigned to the district for the support.·of schools, and · neglect to .appropriate it to·that use, can :the district,·after· his term of office has. expired,.recover·the money :of· him· in an .action for .money had · and.received ?

There. is some apparent conflict.in our decisions on :this subject, which a reference to.the history·of :the. law regulating schools· and school districts may help to explain.

Under the statutes of 1805 and 1808, the selectmen were required to assess a certain amount of taxes for the support of schools; and the selectmen themselves were charged with the duty of appropriating it. None of this money was paid over to the district; no officer of the district had anything to do in employing teachers or in anything else relating to the appropriation of the money raised for the support of schools. If the selectmen neglected to appropriate the money it was recovered of them by a public prosecution, and in that case appropriated by the town clerk. Provision was made for raising money in the districts to build and repair school houses, and that money was appropriated by special committees of the districts. But with the money raised by general tax on the towns, neither the district, nor any officer of the district, had anything whatever to do. The districts by a special provision of the statute were empowered to maintain action of trespass and ejectment in reference to school houses and the land on which they stood; but they had no general capacity to sue and be sued as bodies corporate and politic. The policy of the law, then, entrusted the regulation of schools and the appropriation of the school money to the selectmen, and not to the school districts, or any officers of the districts. Except in certain particulars relating to school houses, the districts were mere territorial divisions without the power of corporate action, and without corporate liability. The law was substantially the same under the provincial government, and so remained down to 1827. Statutes, edition of 1830, p. 428, sec. 1, and p. 430, sec. 7.

By successive changes in the acts of 1827, 1829, and the Revised Statutes in 1842, the whole duty of appropriating money to the support of schools has been transferred to the school districts and the officers of the districts. The money is required to be paid over to the prudential committee, and that officer is charged with the duty of appropriating it. After payment to him the selectmen have no control of the money, nor any official responsibility for it. Prudential committees were first chosen under the law of 1829, and under that law they were charged with the duty of hiring teachers, &c. But further important changes were made by the Revised Statutes. By them it was first provided that every school district should be a body politic and corporate, with power to sue and be sued, and to take, hold, manage and convey real and personal property for the use of the district. Rev. Stats. ch. 70, sec. 1. And by ch. 73, sec. 10, the district is made liable for the wages of teachers and for all contracts lawfully made by the prudential committee; and provision was also then made for satisfying judgments recovered against school districts.

Under the old system the districts had no control over the school money; no authority to intermeddle with it, and of course no responsibility in reference to it; nor were they bound by any contracts made for the support and maintenance of schools. Neither had the towns any legal interest in the money, nor any responsibility for the due appropriation of it; and it was therefore held that as the law then stood the legal interest in the money belonged to the selectmen; that they alone were

responsible for it, and they alone could maintain any action in respect to it. *Tolman* v. *Marlborough*, 3 N. H. 57.

But as the law now stands it is quite clear that the selectmen, after they have paid the money to the prudential committee, have no legal interest and can maintain no action for it, or in reference to it. The money has been paid into the hands of the proper officer of the district, who receives it as the official agent of the district to be applied to their use under the law. The prudential committees are not mere public officers without authority to bind any principal as the selectmen formerly were ; but they act for the district and by the express permission of the statute they bind the district by contracts made within the scope of their office. In all contracts made by the committees they bind the districts, and of course act as their official agents ; and it must follow that they receive and hold the money for the districts, and act as the selectmen did under the former law. It would seem to be unreasonable and legally absurd that the district should be bound by contracts made in their behalf for the appropriation of the money, and yet should have no such interest in the money as will enable them to enforce the application of it according to law, so as to discharge the contracts, for which they are liable under the statute.

In the *School District* v. *Estes*, 16 N. H. 146, decided in 1844, but arising out of facts occurring in 1839, it was held that a school district could not maintain an action against the prudential committee to recover a balance of the school money raised by the town and assigned and paid over to the committee by the selectmen. This decision appears to be put on the ground that no essential change had been made in the law on this subject since the case of *Tolman* v. *Marlborough*. No reference is made to the radical change of policy in transferring the management of schools and school money to the officers of the district. It seems to go partly, if not altogether, on the supposition that the statute having given certain actions to the districts in a few special cases, no other actions could be maintained for other purposes. There was more color for that view of the matter in 1839 than since the Revised Statutes, which charge districts generally with contracts made in their behalf by the prudential committees, provide for the satisfaction of judgments recovered against them, endow them with the general powers of corporations to sue and be sued, and to hold, manage and convey property for the use of the districts.

It has since been held that under the law as it now stands, a school district may maintain an action to recover of the prudential committee money assigned to the district and remaining in his hands unappropriated after his term of office has expired. *School District in Moultonborough* v. *Tuttle*, 26 N. H. 470, which would seem to be directly in point, and a decisive authority for the plaintiff. The right of these plaintiffs to recover is also involved in the decision, *Barrett* v. *School District in Bow*, 37 N. H. 449.

I do not understand that these later cases are to be regarded as overruling *Tolman* v. *Marlborough*, and *School District* v. *Estes;* but as declaring the law as it has been changed by subsequent legislation.

It has been argued that the criminal prosecution given by the statute is the only remedy, if the money is not duly appropriated. But the criminal prosecution is not intended as a remedy for the districts to enforce their rights. It is not instituted in promotion of the districts, and is not under their control. It is instituted on public account to compel the application of the money required by law to be raised for the support of schools to that object as matter of public policy. The law does not leave it to the option of the school districts whether the money assigned to them shall be applied to the support of schools. It is matter of general public concern, and the design of the criminal prosecution is, not to take from school districts the right to recover their money from a delinquent committee by the ordinary legal remedy, but to compel school districts and school committees to appropriate the money raised for that purpose to the support of schools in accordance with the policy of the law, which imposes the duty of providing instruction in the public schools, whether the districts desire it or not.

On the case stated the plaintiffs are entitled to judgment.